EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>Address of Court:  7325 S. Potomac St., #100<br>Centennial, CO 80112 | DATE FILED: May 1, 2020 11:32 AM<br>FILING ID: 1FE507E812443<br>CASE NUMBER: 2020CV30920 |
| THE EDGE CHURCH,<br><br>Plaintiff,<br><br>v.<br><br>BROTHERHOOD MUTUAL<br>INSURANCE COMPANY,<br><br>Defendant. | ▲FOR COURT USE ONLY▲ |
| **ATTORNEY FOR PLAINTIFF:**<br>Jonathan E. Bukowski, Esq.<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: jbukowski@merlinlawgroup.com | Case Number:<br><br>Div.:          Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW** Plaintiff, The Edge Church, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, Brotherhood Mutual Insurance Company, and in support of its Complaint, allege and aver as follows:

## PARTIES

1. At all times material hereto, Plaintiff, The Edge Church (hereinafter "Plaintiff" or "Edge Church"), is an individual domiciled in Louisville, Colorado.

2. Defendant, Brotherhood Mutual Insurance Company (hereinafter "Brotherhood" or "Defendant"), is a foreign insurance company incorporated and domiciled in the state of Illinois and maintains its principal place of business in a state other than in Colorado.

## JURISDICTION AND VENUE

3. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

4. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

5. Jurisdiction is proper as to Brotherhood pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because Brotherhood conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within the State of Colorado.

6. Venue is proper pursuant to Col.R.Civ.P. 98 because it is the venue in which the cause of action accrued and where the insured property in question is located.

## FACTS COMMON TO ALL COUNTS

7. Edge Church is the owners of property that is located at 19697 East Smoky Hill Road, Centennial, Colorado 80015 (hereinafter the "Property").

8. The Property is a Church consisting of five sections. The largest section on the east side of the Property consists of a hip frame that was finished with painted steel panels. Near the edges of the roof are metal snow stops. Directly west of the metal roof section is a large triangular modified bitumen (mod-bit) roof section. Directly to the west of the triangular mod-bit section is a rectangular mod-bit section. South of the rectangular mod-bit section are two sections that are finished with laminated asphalt composition shingles.

9. Edge Church purchased the Property in October 2015. The painted steel panel roof on the east side of the Property had never leaked between Edge Church's purchase of the Property and June 18, 2018.

10. Edge Church purchased a Ministry First Commercial Multi-Peril Insurance Coverage policy of insurance from Brotherhood under Policy Number 0517237780 with effective dates from December 21, 2017 through December 31, 2020, which included coverage for the Property (the "Policy"). A copy of the Policy has been attached as **Exhibit 1**.

11. The Policy provides replacement cost value coverage for direct physical loss resulting from hail or wind.

12. The Policy has replacement cost coverage limits of $5,945,000 for the Edge Church Property.

13. To secure the coverage and protections provided by the Policy, Pine Terrace paid $9,005 in annual premiums.

14. The Policy provides coverage for the cost to repair, replace, or rebuild Property with material of like kind and quality that has sustained direct physical loss resulting from hail or wind.

15. The Policy includes an endorsement specifically relating to metal roofing or metal top roof equipment or accessories, which provides:

> **Metal Roofing and Metal Roof Top Accessories:**
>
> We do not cover loss to metal roofing or metal roof top equipment or accessories, unless there has been:
>
> a. A decrease in functionality of the covered property;
> b. A decrease in the useful life of the covered property; or
> c. Dents, dings, or dimples to the covered property that can be seen without aid from either the ground or near the insured premises or inside or from a balcony of the building supporting the covered property.

16. The Policy does not include an endorsement excluding direct physical loss to metal roofing or metal top roof equipment or accessories that results in a decrease to the market value of the metal roofing or metal top roof equipment or accessories.

17. The Policy does not include an endorsement excluding direct physical loss to metal roofing or metal top roof equipment or accessories that results in a decrease in the performance of the metal roofing or metal top roof equipment or accessories.

18. The Policy provides coverage for the reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property.

19. Under the Policy, Brotherhood agreed to adjust all losses with Edge Church fairly and timely.

20. Edge Church paid the premiums due under the Policy in a timely manner and otherwise performed all duties and responsibilities required of it under the Policy.

21. On or about June 18, 2018, during the Policy period, the Property suffered direct physical loss and/or damage resulting from a hail and/or wind (the "Storm").

22. The largest hail falling at the Property during the Storm were at least 2 inches in diameter.

23. The Storm caused damage to the metal roof, shingle roof, modified bitumen flat roof, gutters, stucco, windows, HVACs, and leaking into thirteen interior rooms, including leaking on the south side of the metal roof.



24. The Storm caused direct physical loss to the metal roof resulting in removal of the snow guards and causing interior leaking.

25. The Storm caused direct physical loss to the metal roof resulting in a decrease in functionality of the metal roof.

26. The Storm caused direct physical loss to the metal roof resulting in a decrease in the useful life of the metal roof.

27. The Storm caused direct physical loss to the metal roof resulting in a decrease in the market value of the metal roof.

28. The Storm caused direct physical loss to the metal roof resulting in a decrease in the performance of the metal roof.

29. The direct physical loss of and/or damage resulting from the Storm was promptly reported to Brotherhood.

30. Brotherhood assigned Claim Number 0517237780 (the "Claim") to Edge Church Loss.

31. Brotherhood assigned its adjuster, Patrick Hurley ("Hurley"), to investigate and adjust Edge Church's Claim.

32. Brotherhood assigned an independent adjuster, Alan Tamondong ("Tamondong"), to inspect the Property and create an estimate of the cost to repair the hail damage caused by the Storm.

33. On June 1, 2018 and July 7, 2018, Tamondong performed inspections of the Property and prepared estimates totaling $209,635.13 in RCV and $159,137.43 ACV.

34. On August 15, 2018, Brotherhood provided Edge Church with manipulated estimates from Tamondong totaling $96,107.53 RCV and $67,665.17. The manipulated repair estimates did not include an allowance for repairs of hail damage to the modified bitumen roof, metal roof, or interior damage, and included an improper combing repair of the destroyed HVAC

units. The manipulated repair estimates improperly withheld an allowance for general contractor overhead and profit – the fees charged by a general contractor to manage, supervise, and coordinate repairs to damaged property such as Edge Church's Property. Despite the damages resulting from one storm, Brotherhood notified Edge Church that it was applying two deductibles and would be issuing an actual cash value payment totaling $65,665.17.

35. Due to Brotherhood's poor handling of the Claim, Edge Church was forced to retain a public adjuster in November 2018.

36. On December 14, 2018, the public adjuster provided Brotherhood with a letter of representation an initial repair estimate in the amount of $678,428.33. The initial repair estimate provided for replacement of the metal roof and shingle roof, windows, repairs to the modified bitumen roof, gutters/downspouts, and interior damages that were overlooked during Brotherhood's investigation of the Claim.

37. In January 2019, Brotherhood hired HAAG Engineering to rubberstamp the coverage position outlined in its denial letter. HAAG Engineering defines functional damage to roofing materials as the diminution of water-shedding capability or reduction of the expected service life of the roofing material. HAAG Engineering provides education seminars where it trains participants how to determine if the service life of a roofing surface has been reduced due to hail.

38. In an August 2018 HAAG Engineering blog post, HAAG instructs readers how to determine if there has been a decrease in the functionality of a metal roofing surface due to hail:

> Removal of protective coatings by hail (again, typically field-applied coatings) also occurs on occasion from hail impacts and has been considered damage to metal roofing as the service life of the roof would be reduced.

39. HAAG Engineering performed two inspections of the Property; one in January and one in February 2019, and subsequently generated a corresponding inspection report dated February 28, 2019. HAAG documented hailstone impact damage to the metal roof, modified bitumen membranes, and asphalt shingle roof. While HAAG noted that hailstone impacts disrupting the protective coatings of metal panels lead to a loss of performance, HAAG noted that it did not observe fracturing of the protective coating of the metal roof during its inspections. HAAG did not evaluate whether hailstone impact indentations to the metal roof resulted in a decrease to the market value of the metal roof.

40. On April 16, 2019, a copy of the HAAG report was provided to Edge Church's public adjuster. The public adjuster notified Defendant that hail stone impact indentations could be observed from the ground.

41. On or about June 11, 2019, Edge Church issued correspondence to Brotherhood:

- requesting clarification as to why the hail damaged metal cap flashing had been paid for, but the metal roof had been denied;
- notifying Brotherhood that the metal roof had never leaked prior to the Storm; and
- notifying Brotherhood that the hail damaged snow guards had never been removed prior to the Storm.

42. On July 31, 2019, Brotherhood notified Edge Church that it was relying on HAAG's report to deny coverage on the metal roof.

43. On or about July 30, 2019, Brotherhood provided Edge Church with a revised repair estimate totaling $224,458.45 RCV and $172,998.87 ACV. The revised repair estimate did not include any allowance for the functionally damaged metal roof.

44. Edge Church subsequently retained a Colorado licensed professional engineer and metallurgist to determine whether the hailstone impact damage to the metal roof had resulted in a decrease in functionality, decrease in the useful life, or could be observed without aid. Following

an inspection of the Property and selective panel samples, Edge Church's engineer documented evidence of widespread and randomly distributed hailstone impact indentations throughout all slopes of the metal roof. Metallurgical analysis confirmed that the protective coating of the metal panels had been removed by the hailstone impacts resulting from the Storm. Based on its observations and review of the metallurgical data, Edge Church's engineer determined that the hailstone impacts had resulted in a decrease in functionality and decrease in the useful life of the metal roof. Edge Church's engineer concurred with HAAG Engineering that replacement of the metal roof was necessary to repair the hailstone indentations.

  

45.     The engineering report and metallurgical report confirm that the hail stone indentations identified by HAAG had compromised the coating and Galvalume layers protecting the steel roof panels covering the Property. The photographs included within Edge Church's engineering report further illustrated that corrosive elements had entered the steel substrate of the panels, demonstrating that both the functionality and useful life of the steel panels had been decreased because of the hail stone indentations identified by HAAG and Edge Church's engineer.

46.     On December 19, 2019, Edge Church provided a copy of the engineering report and metallurgical analysis to Brotherhood. Edge Church also provided an estimate outlining the cost to repair the remaining unpaid damages, including the metal roof, flashing on the shingle roof, insulation, gutters, interior damage, and ancillary repairs to the flat roofs, in the amount of

$739,602.20. To date, Brotherhood has never reinspected the Property or reevaluated the additional unpaid damages outlined in the December 19, 2019 letter.

47. On December 31, 2019, Brotherhood advised Edge Church that it was forwarding the additional materials to a metallurgist. To date, Edge Church has never been provided with any metallurgical data, nor has Brotherhood conducted a reinspection of the sampled panels.

48. On January 16, 2020, Edge Church requested all communications between Brotherhood and HAAG regarding the engineering and metallurgical analysis. To date, Edge Church has never been provided with any communications or countering opinion from HAAG.

49. On January 16, 2020, Edge Church requested a status of the review of the metallurgical data supplied to Brotherhood on December 19, 2019. Edge Church further requested that Brotherhood forward all communications between it and its metallurgist regarding his data/findings resulting from review of Edge Church's metallurgical data. To date, Edge Church has never been provided with any metallurgical data or countering metallurgical opinion.

50. On January 29, 2020, Brotherhood requested that the samples taken by Edge Church's engineer be made available to Brotherhood for further analysis. While the samples have been available to Brotherhood since December 2019, to date, Brotherhood has made no efforts to obtain the samples.

51. On February 9, 2020, Brotherhood expressed a desire to conduct a joint reinspection of the metal samples with Edge Church's metallurgist. To date, Brotherhood has made no efforts to conduct the joint inspection.

52. On March 13, 2020, Edge Church requested a status on Brotherhood's metallurgical analysis of the metal samples. On March 16, 2020, Brotherhood notified Edge Church that it would let Edge Church know the status when it found "out what the status is." Edge Church made

additional inquiries on March 26, March 21, and April 6. However, Brotherhood has not responded or otherwise provided Edge Church with information regarding the metallurgical analysis.

53. To date, Brotherhood has never evaluated whether hailstone impact indentations to the metal roof resulted in a decrease to the market value of the metal roof.

54. To date, Brotherhood has made no efforts to contact Edge Church's engineer or metallurgist to discuss their investigation or analysis.

55. Given the overwhelming objective documentation and analysis demonstrating that both the functionality and useful life of the metal panels had been decreased because of the Storm, Brotherhood's use of the Metal Roofing and Metal Roof Top Accessories endorsement as an absolute shield from liability is not only a fraud, but sufficient evidence for a jury to determine that Brotherhood knowingly violated its duties under Colorado Revised Statutes § 10-3-1104.

56. The actions of Brotherhood have caused Edge Church great financial harm. The cost of repairs to the Property in dispute have increased to $752,113.94 due to the unreasonable delay caused by Brotherhood's untenable position and its failure to consider the information provided by Edge Church. Edge Church has also incurred significant costs in its retention of a public adjuster, attorney, and over $23,000 related to its retention of an engineer and metallurgist to confirm the functional damage and reduction in useful life of the metal roof.

57. Brotherhood's unreasonable conduct has effectively compelled Edge Church to institute litigation to recover amounts due under the insurance policy.

58. Edge Church has cooperated with Brotherhood in its investigation of the Claim.

59. Brotherhood refuses to provide the contractually required and covered benefits to Edge Church.

60. Brotherhood has breached its covenant of good faith and fair dealing that it owes to Edge Church by engaging in a pattern of conduct designed to deprive Edge Church of its rights and benefits under the Policy.

61. Brotherhood's failure to pay the claim has resulted in an unreasonable delay and denial of covered benefits to Edge Church without a reasonable basis.

62. Edge Church has fulfilled all duties required of it under the Policy after discovery of the Loss.

63. Edge Church has performed all conditions precedent and subsequent required under the Policy, or alternatively, have been excused from performance by the acts, representations, and conduct of Brotherhood.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief)**

64. Plaintiff realleges and reaffirms Paragraphs 1-63 as if fully set forth herein.

65. Plaintiff seeks declaratory judgment, pursuant to the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 et seq. and F.R.C.P. 57, as to its rights and obligations under the contract of insurance, including but not limited to:

   a. That the Policy does not exclude coverage for direct physical loss caused by hail to the surface of a metal roof resulting in a loss of performance of the metal roof.

   b. That the Policy does not exclude coverage for direct physical loss caused by hail to the surface of a metal roof allowing for corrosive elements to enter the metal roof.

   c. That the Policy does not exclude coverage for direct physical loss caused by hail resulting in a loss in the market value of a metal roof.

   d. That there is coverage for hail damage to Plaintiff's metal roof.

66. In requesting this declaratory relief, Plaintiff is requesting an interpretation of the rights, legal status and relationships of the parties under the above law and facts. Such interpretation is appropriate under the provisions of the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 *et seq.* and F.R.C.P. 57.

**WHEREFORE**, Plaintiff, The Edge Church, request that the Court determine the rights, status or other legal relations of the parties under the above law and facts, and for all other relief to which Plaintiff may be entitled.

## SECOND CLAIM FOR RELIEF
**(Breach of Contract)**

67. Edge Church realleges and reaffirms Paragraphs 1-66 as if fully set forth herein.

68. Edge Church purchased an all risk policy requiring Defendant to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

69. The Policy between Edge Church and Defendant is a binding contract.

70. Edge Church paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Defendant.

71. Defendant has denied certain covered damages and continues to delay and deny certain claimed damages as outlined above.

72. Defendant's failure to honor its obligations under the Policy is a breach of contract.

73. Defendant's breach of contract has damaged Edge Church.

74. Edge Church is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, The Edge Church, respectfully requests this Court enter judgment against, Defendant, Brotherhood Mutual Insurance Company, for damages resulting

from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

75. Edge Church realleges and reaffirms Paragraphs 1-74 as if fully set forth herein.

76. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

77. Defendant sold Edge Church the Policy at issue, the intent of which was to provide coverage for loss or damage to covered property at the premises caused by or resulting from any covered cause of loss. Defendant knew that Edge Church purchased the Policy to protect its Property in the event of a loss.

78. At all times material hereto, Defendant had a duty to act reasonably and in good faith in the handling of the Claim.

79. At all times material hereto, Defendant had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Edge Church and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

80. Defendant had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims. However, Defendant has conducted an outcome-oriented investigation and has refused to consider the additional information submitted by Edge Church demonstrating hail damages that have been overlooked during Defendant's investigation.

81. Defendant had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

82. Edge Church has cooperated with Defendant in the processing and investigation of its Claim for covered benefits resulting from the Storm.

83. Defendant has misrepresented what constitutes cosmetic damage to shield itself from payment of Edge Church's covered loss for damage to their DECRA roof.

84. Defendant has delayed the Edge Church Claim by failing to objectively evaluate the Claim based on all available evidence, and not just evidence which Defendant believes supports its position. For example, Defendant has refused to perform a reinspection of the Property to review the information provided by Edge Church and its representatives demonstrating additional damages overlooked by Defendant during its prior inspections. Defendant has also refused to consider the additional information provided by Edge Church and its representatives, including engineering and metallurgical analysis demonstrating functional and non-cosmetic damage to the metal panel roof. Defendant has completely abandoned the Claim and ceased all communications with Edge Church.

85. Defendant failed to resolve doubts concerning insurance coverage in favor of the policyholder and has mischaracterized the evidence to the benefit of itself, including its misrepresentation of the observations documented by HAAG Engineering, Edge Church's engineer, and Edge Church's metallurgical demonstrating unpaid covered damages to the Property.

86. Defendant has failed to be open and honest in its dealings with Edge Church, including its misrepresentation of the Policy conditions and refusal to consider information presented by Edge Church.

87. Defendant has delayed payment of the Edge Church Claim without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

88. Defendant knew that its delay in payment of covered benefits owed would cause Edge Church financial hardship.

89. Defendant failed to conduct a thorough and timely investigation of the Edge Church Claim in accordance with insurance industry Claim handling standards and practices. Defendant breached its duty of good faith and fair dealing by failing to conduct a proper investigation of the loss. Defendant has breached its duty of good faith and fair dealing by failing to interpret its insurance policy reasonably. Defendant has breached its duty of good faith and fair dealing by misrepresenting terms and conditions of the Policy in an attempt to influence Edge Church to settle for less than all benefits reasonably afforded under the Policy for the subject loss and damage. Defendant has breached its duty of good faith and fair dealing by compelling Edge Church to file litigation to recover amounts due under their insurance policy. Defendant has breached its duty of good faith by failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of the Edge Church Claim where liability has become reasonably clear.

90. Defendant has committed unfair Claim settlement practices as alleged in the preceding paragraphs of the Complaint.

91. Defendant's conduct constitutes a bad faith breach of the insurance contract.

92. Defendant has committed such actions with such frequency as to indicate a general business practice.

93. As a direct and proximate result of Defendant's actions, Edge Church has:

    (a)    incurred increased costs to repair, restore and/or replace the significant property damage;
    (b)    suffered damages as a proximate result of the misconduct alleged;
    (c)    incurred the cost of retaining a public adjuster;
    (d)    incurred the cost of retaining an engineer;
    (e)    incurred the cost of retaining a metallurgist;
    (f)    incurred the cost of filing a lawsuit; and

(g)   suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, The Edge Church, respectfully request this Court enter judgment against Defendant, Brotherhood Mutual Insurance Company, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**FOURTH CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

94.  Edge Church re-alleges and reaffirms Paragraphs 1-93 as though fully set forth herein.

95.  Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

96.  Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

97.  Edge Church is a first-party claimants within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

98.  Edge Church suffered a loss covered by the Policy and submitted a claim for that loss to Defendant.

99.  The claimed loss and damage submitted by Edge Church were covered by the Policy and Edge Church was owed covered benefits under the Policy.

100.  Defendant delayed and denied payment of covered benefits to Edge Church as alleged in the preceding paragraphs of the Complaint without a reasonable basis for its actions.

101. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by failing to promptly issue an actual cash value payment for undisputed damages.

102. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by preferring HAAG's opinions without giving due consideration to the contrary opinions of the public adjuster, Edge Church, GRK Engineering, and Stolk Laboratories.

103. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by failing to properly investigate its insured's loss.

104. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by steadfastly refusing to conduct a reinspection of the property after being presented with additional information.

105. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by failing to promptly investigate its insured's loss.

106. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by ignoring objective evidence of direct physical loss and damage to the Property, including its refusal to consider additional information provided by Edge Church's engineer and metallurgist.

107. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by misrepresenting the terms of its Policy to avoid payment of covered benefits to Edge Church.

108. Defendant delayed and denied payment of covered benefits to Edge Church without a reasonable basis for its action by failing to pay covered benefits over one year after the occurrence of Edge Church's covered loss.

109. Defendant unreasonably delayed and denied the Claim by asserting coverage positions that it knew were without merit.

110. The actions of Defendant were intended to dissuade Edge Church in pursuing benefits due and owing under the terms of the Policy.

111. Based upon the foregoing Paragraphs, Edge Church is therefore entitled to two times the covered benefit that have been delayed and denied to them, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, The Edge Church, respectfully request this Court enter judgment against Defendant, Brotherhood Mutual Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

112. Edge Church demands trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 1st day of May, 2020.

/s Jonathan E. Bukowski
Jonathan E. Bukowski, Esq.
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone: 720-665-9680
Facsimile:  720-665-9681
E-Mail: jbukowski@merlinlawgroup.com